## UNITED STATES v. LAKE SHORE & M. S. RY. CO. et al.

(District Court, S. D. Ohio, E. D. January 18, 1924.)

No. 1584.

1. **Monopolies 24(2)—Jurisdiction retained by decree to make further orders and decrees held to continue until combination completely dissolved.**

Jurisdiction retained by decree ordering dissolution of alleged combination to make such further orders and decrees as might be necessary *held* to continue until combination was completely dissolved.

2. **Judgment 701—Decree of state court that mortgage was valid lien on subsidiary's coal lands held binding, as against claim of purchaser of subsidiary's stock that situation was illegal.**

Where coal lands belonging to railroad's subsidiary were mortgaged as additional security for railroad's mortgage bonds, subsidiary agreeing to pay royalty on all coal mined into sinking fund for railroad's mortgage bonds, *held*, that decree of state court that mortgage and subsidiary's covenants were valid liens was binding adjudication, as to validity of mortgage against claim of purchaser of subsidiary's stock, that mortgage and royalty agreement violated decree dissolving combination under Sherman Anti-Trust Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830).

3. **Monopolies 24(2)—Purchaser of stock in subsidiary, sold under decree dissolving illegal combination, held not entitled to assert illegality of mortgage on subsidiary's coal lands securing railroad's bonds.**

Where purchaser of stock in railroad's subsidiary, sold under decree dissolving illegal combination under Sherman Anti-Trust Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), as part of consideration recognized validity of mortgage on subsidiary's coal lands given as additional security for railroad's mort-gage bonds, including agreement to pay royalty on coal mined into sinking fund for such bonds, he could not thereafter in proceeding in equity assert that mortgage on coal lands was illegal.

4. **Monopolies 24(2) — Mortgage on coal lands of subsidiary, stock of which was sold under decree dissolving illegal combination, held not so illegal as to authorize its discharge on suit of government.**

Where purchaser of stock in railroad's subsidiary, sold under decree dissolving illegal combination under Sherman Anti-Trust Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), as part of consideration recognized validity of mortgage on subsidiary's coal lands given as additional security for railroad's mortgage bonds, including agreement to pay royalty on coal mined into sinking fund for such bonds, *held*, that, in view of provision of contract between purchaser and railroad that railroad property must first be used before resort could be had to coal lands, situation was not so clearly illegal as to justify discharge of coal lands from mortgage lien on suit of government, under existing conditions.

In Equity. Suit by the United States against the Lake Shore & Michigan Southern Railway Company and others, wherein the United States filed a supplemental petition. Supplemental petition dismissed without prejudice.

See, also, 281 F. 1007.

Henderson & Burr, of Columbus, Ohio, and Wm. Burry, of Chicago, Ill., for Buckeye Coal & Ry. Co. and Sunday Creek Coal Co. of Ohio.

Benson W. Hough, U. S. Atty., of Columbus, Ohio.

John F. Wilson, of Columbus, Ohio, for Hocking Valley Ry. Co.

Before KNAPPEN and DENISON, Circuit Judges, and A. M. J. COCHRAN, District Judge (sitting by designation).

PER CURIAM. In the year 1912 the United States began suit in equity herein against six railroad companies and three coal companies, named in the margin hereof,[1] to dissolve a combination alleged to violate the Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. §§ 8820–8823, 8827–8830). Our decree of March 14, 1914, declared the combination to be in violation of the act, and ordered dissolution by

[1] The Lake Shore & Michigan Southern Railway Company, the Chesapeake & Ohio Railway Company, the Hocking Valley Railway Company, the Toledo & Ohio Central Railway Company, the Kanawha & Michigan Railway Company, the Zanesville & Western Railway Company, the Sunday Creek Company, the Continental Coal Company, the Kanawha & Hocking Coal & Coke Company.

the sale of the railway companies' interests in the stock of the Sunday Creek Company, the disposition of stock in the Kanawha & Michigan Railway Company, and otherwise, including the enjoining of the Lake Shore & Michigan Southern, the Toledo & Ohio Central, the Hocking Valley, and the Chesapeake & Ohio Railroad Companies from owning or controlling any stock in the Sunday Creek Company, or any interest in any of the coal properties in which that company is interested. Jurisdiction of the cause was expressly retained by the decree for the purpose of making such other and further orders and decrees as might be necessary to the due execution of the decree of 1914, and the complete dissolution of the combination condemned thereby.

A detailed history of the case will be found in the opinion of this court upon which that decree was based. United States v. L. S. & M. S. Ry. Co. et al., 203 F. 295. Under that retention, orders have been made from time to time, as deemed necessary, to effectuate dissolution.

When that decree was made, the Hocking Valley Railway Company owned the entire of the capital stock of the Buckeye Coal & Railway Company (consisting of 2,500 shares), all of which except 5 qualifying shares were held in pledge by the Central Trust Company, as trustee under the Hocking Valley Railway Company's first consolidated mortgage of 1899, by which mortgage the Buckeye Company had conveyed certain coal lands as further security for the payment of the Hocking Valley Railway Company's bonds secured by that mortgage, by the terms of which the Buckeye Company agreed to deliver, beginning July 1, 1900, yearly statements of coal mined, and to pay two cents per ton on such coal, to be used as a sinking fund for the purchase and cancellation to that extent of the mortgage bonds of the Hocking Valley Company.

On May 19, 1916, upon application of the United States, this court made an order that the capital stock of the Buckeye Company be sold free and clear of the mortgage lien, and that the proceeds thereof be paid to the mortgage trustee to apply on the mortgage bonds. 281 F. 1007. Under that order the Buckeye Company stock was sold to John S. Jones for $50,000 (in connection with the sale to him of the outstanding stock and bonds of the Ohio Land & Railway Company for $400,000), the sale being approved by this court upon presentation of the contract of sale between Jones, on the one part, and the Hocking Valley and Chesapeake & Ohio

Railway Companies, on the other, and after taking the testimony of witnesses in open court relating to conformity of such sale to the order of May 19, 1916, the reasonableness of the price paid, and the satisfactory status of the purchaser; the mortgage trustee in connection therewith waiving its then pending appeal to the Supreme Court from the order of May 19, 1916. The contract between Jones and the railroad companies contained a recital of the inclusion in the Hocking Valley mortgage of the Buckeye real estate as such further security for the payment of the mortgage bonds, as well as the agreement in the mortgage for the payment by the Buckeye Company of the two cents per ton royalty on coal mined from its property so mortgaged. This recital was followed by express provision that the Hocking Valley Company should cause all the mortgaged property of that company to be first exhausted before any recourse under the mortgage to the property of the Buckeye Company; and that the Hocking Valley Company indemnify the Buckeye Company from any loss or damage to or payment by that company under the provisions of the mortgage "save only said two cents per ton royalty above mentioned," and that nothing contained in said agreement was intended or should be construed in any wise to limit, or affect, or impair, the several covenants or obligations of the Buckeye Coal & Railway Company contained in said mortgage.

After the purchase by Jones (who owned and owns all the Buckeye stock), the Buckeye Company failed and refused to carry out the provision for royalty payment. The mortgage trustee began suit in this court, in the year 1919, for the collection thereof, which suit is still pending and undetermined. In the same year the Buckeye Company instituted suit in a state common pleas court of Ohio to quiet its title against the claims of the mortgage trustee under the Hocking Valley mortgage. The Sunday Creek Coal Company of Ohio (not the original Sunday Creek Company), which had succeeded to the rights of the Buckeye Company in the lands, was made a party plaintiff. Upon final hearing upon issues joined, the common pleas court dismissed the petition, adjudging that the mortgage "and the covenants of the Buckeye Coal & Railway Company therein contained are valid and binding obligations, and a good and valid lien upon the real property in said mortgage * * * described."

This decree was affirmed by the state Court of Appeals, the Supreme Court of Ohio declining to order the case certified for its re-

view. Thereupon the Buckeye Company and the Sunday Creek Coal Company filed their petitions in this court, asserting that the situation created by the Hocking Valley trust mortgage, including especially the two cents per ton royalty provision, was in violation of the decree of dissolution previously made by this court; and asking that the demand or collection of the two cents per ton royalty be enjoined, the lands of the Buckeye Company released from the mortgage, and particularly from section 9 thereof (which contains the royalty provision), or that all interests of the railway company and the mortgage trustee in the Buckeye property be sold, or such other and appropriate order as will "effectively carry out the purpose and effect" of the decree of 1914. After issues joined on the petition, and before decision thereon, the United States filed its supplemental petition herein, asking that the Buckeye coal lands be released from the lien of the Hocking Valley mortgage and the Buckeye Company discharged from its obligation to pay the two cents per ton royalty, upon payment by the Buckeye Company, or its successors in interest, to the Hocking Valley's mortgage trustee the reasonable value of the rights of the trustee, to be judicially ascertained; and on the ground that the situation created by such lien and royalty provision violates the Anti-Trust Act and contravenes the original decree of dissolution made herein. It will be observed that the substantial difference between the petitions of the coal companies and the government, respectively, is that the one asks such release without the other upon compensation to the mortgage trustee.

[1-3] So far as concerns the petition of the Buckeye Company and the Sunday Creek Company, we think it clear that relief should be denied. While our jurisdiction generally to make such further orders and decrees as should be necessary to the due execution of our main decree, and the complete dissolution of the condemned combination, continued without abatement until such complete dissolution should be effected (United States v. L. S. & M. S. Ry. Co. et al., supra), there is perhaps substantial force in the thought that the order of this court of May 19, 1916, and the sale of the Buckeye Company's stock thereunder, exhausted the jurisdiction of this court over the specific question whether the situation created by the lien of the Hocking Valley mortgage upon the Buckeye Company's lands, given to secure the railroad's indebtedness, in connection with the tonnage royalty provision,

was so far unlawful as to require its elimination. This court approved the sale of the stock to Jones with full knowledge of the fact situation now complained of, and presumably without its occurring to either court or government's counsel that the situation created a substantial interference with the free competition aimed at by the original decree. The action taken might not improperly be thought to carry a tacit implication that the situation here presented was not then regarded open to criticism. But wholly apart from this consideration, and without passing upon its merits, we think relief forbidden by these further considerations: In the first place, assuming, for the purposes of this opinion, that the petitioning coal companies have a legal interest in the elimination of the alleged unlawful feature, we see no reason to doubt that, as between the two original petitioners and the Hocking Valley Company and its mortgage trustee, the decree of the state court binds both the Buckeye Company and the Sunday Creek Company as an adjudication of the complete validity of the mortgage as against the attacks now made upon it. Again, this is a proceeding in equity, and it is manifestly inequitable that either Jones or those standing in his right escape liability for a situation assumed by them, and, as we must find, then recognized as of binding force, and whose assumption seems fairly to have been part of the consideration paid by Jones for the Buckeye stock. In the situation presented, we think, the petitioning coal companies cannot be heard to say that payment of the royalty, or the continuance of the mortgage lien upon the lands of the Buckeye Company, would violate the law. The fact that the government did not answer or take issues upon the coal companies' petition cannot alter the result otherwise reached. The petition of the coal companies must be denied.

[4] The government's supplemental petition rests upon a different foundation. It is conceded that the decision of the Supreme Court in the Reading case (Continental Coal Co. v. United States, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871), announced about six years after the sale to Jones of the Buckeye stock, and shortly before the filing of the government's supplemental petition before us, suggested to government's counsel the invalidity of the situation we are considering. It was eminently proper that the government bring this situation before the court, and afford opportunity for such action, if any, as should seem to be called for. But we are not impressed that the situation calls

for the relief asked. Again passing without decision the question of the exhausting of jurisdiction of this court over the subject-matter of the supplemental petition, by the action had in the sale to Jones, it seems plain that even in view of the Reading decision the criticized situation is not so clearly improper, nor so substantial, as to justify the action which the government now asks. Whatever theoretically potential interference with free competition might otherwise be created by the railroad-mortgage lien upon the Buckeye lands in connection with the royalty tonnage provision, we think such interference practically reduced to a minimum by the fact that by the contract between Jones and the railroad companies the railroad property must first be exhausted before resort can be had to the coal lands, in connection with the fact that no suggestion is made that the railroad property is not entirely adequate to meet the payment of the mortgage in full, and the payment of the mortgage puts an end to the royalty. Indeed, an affirmative inference, more or less strong, in favor of the adequacy of the railroad security, seems fairly deducible from the record presented to us. We therefore think that it will be time enough to question the invalidity of the situation we are discussing when, if ever, it becomes acute.

We are accordingly constrained to dismiss the government's supplemental petition. The dismissal, however, will be without prejudice to its right to make further application for relief when, if ever, the situation may be thought to justify it, in view of the considerations we have stated.